# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO WESTERN DIVISION AT DAYTON

BILLY M. SMITH,                           :

              Plaintiff,

Case No. 3:10-cv-448

     -vs-

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

MONTGOMERY COUNTY
SHERIFF'S OFFICE, *et al.,*

          Defendants.                 :

---

## REPORT AND RECOMMENDATIONS

---

       This case is before the Court on several motions including Motion for Summary Judgment of Defendant Douglas Kowalski, (Doc. 100), Motion for Summary Judgment of Defendants Montgomery County Sheriff's Office; Michael L. Hild, Jr., Paul Henson; and Steven Gardiner, (Doc 101), [Plaintiff's] Motion for Partial Summary Judgment Against Defendant Henson, (Doc. 110), [Plaintiff's] Motion for Partial Summary Judgment Against Defendant Kowalski, (Doc. 111), [Plaintiff's] Motion for Partial Summary Judgment Against Defendant Montgomery County Sheriff's Office, (Doc. 112), [Plaintiff's] Motion for Partial Summary Judgment Against Defendant Gardiner, (Doc. 121), and [Plaintiff's] Motion for Partial Summary Judgment Against Defendant Hild, (Doc. 122). The parties have fully briefed the issues raised in all of the pending Motions, (Doc. 100, 126, 129; Doc. 101, 126, 136; Doc 110, 123; Doc. 111, 117; Doc. 112, 124; Doc. 121, 133; Doc. 122, 134), and the matters are ripe for report and recommendations. Because

1

this matter involves a *pro se* litigant it has been referred to the undersigned pursuant to General

Order No. Day12-03, Assignment and Reference to Magistrate Judges (eff. May 15, 2012), for

preparation of a Report and Recommendations under 28 U.S.C. § 636(b).

As this Court recently noted,

> … Mr. Smith is acting *pro se*. The allegations of a complaint drafted
> by a *pro se* litigant are held to less stringent standards than formal
> pleadings drafted by lawyers, and will be liberally construed.
> *Williams v. CSX Transportation Co., Inc.* 643 F.3d 502, 510 (6th Cir,
> 2011), citing *Federal Exp. Corp. v, Holowecki,* 552 U.S. 389, 402
> (2008);   see also, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972);
> *Estelle v. Gamble,* 429 U.S. 97, 106 (1976);   *McNeil v. United
> States,* 508 U.S. 106, 113 (1993).

> Plaintiff Billy M. Smith filed this action pursuant to 42 U.S.C. §
> 1983 against the Defendants alleging that they violated his various
> constitutional rights when Defendants executed a search warrant on
> his residence on February 6, 2009. Doc. 13. Specifically, Mr. Smith
> claims that the individual Defendants violated

> (1) his Fourth and Fourteenth Amendment rights by: (1) unlawfully
> and wrongly seizing his person, causing him unlawful detention
> on serious charges that they knew or should have known were
> false; (2) unlawfully and wrongly seizing his person in clear
> violation of due process; and (3) by unlawfully and wrongly
> seizing his person causing him severe injuries and pain;

> (2) his Fifth and Fourteenth Amendment rights by: (1) knowingly
> and willfully submitting false data regarding the actions or
> omissions that led to or justified his detention; (2) conspiring to
> suborn perjured law enforcement and witness testimony; (3)
> knowingly, willfully, and wrongly concealing information that
> would have assisted him in his defense against serious criminal
> charges; (4) knowingly, willfully, and wrongfully subjecting
> him to lengthy, burdensome, and painful interrogation; and (5)
> knowingly, willfully, and wrongfully restraining or obstructing
> his due process right to legal counsel; and

> (3) his Sixth and Fourteenth Amendment rights to: (1) legal
> counsel; (2) proper and just due process: and (3) equal
> protection under the law while being seized, being detained,

2

being injured and in pain, and being put to a lengthy and burdensome investigation.

(Amended and Supplemented Complaint, Doc. 13 at 4-6, PageID 189-91.

In addition, Mr. Smith alleges that Defendant Montgomery County Sheriff's Department and Montgomery County, Ohio, violated his Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by

(1) failing to prevent defendants Hild, Henson, Gardiner, and Kowalski from performing law enforcement functions after they had used unnecessarily extreme, excessive, and abusive force during the performance of their duties;

(2) failing to notify the Montgomery County Prosecutor's Office of the United States District Attorney's Office that Defendants Hild, Henson, Gardiner, and Kowalski were using unnecessarily extreme, excessive, and abusive force during the performance of their duties, when it had knowledge of the problem and knew or should have known these defendants were filing information for charging him with criminal offenses and the preparing and filing data and reports which were presented to a court of law knowing the information, data, and reports were falsely accusing him; and

(3) failing to notify his attorney or the Montgomery County Prosecutor's Office or the United States District Attorney's Office that Defendants Hild, Henson, Gardiner, and Kowalski were falsifying their case files.

*Id.,* PageID 192-93.

The Court previously granted Montgomery County, Ohio's Motion to Dismiss and it is no longer a party to this action. Doc. 42, 56, 58.

PageID 2722-24.

The Court recently addressed motions which Mr. Smith included in his "Collective Response to All Defendants' Motions for Summary Judgment …" and which the Court treated as separately filed motions. Doc. 126, 127. In doing so, the Court denied Mr. Smith's Motion

3

Objecting to Undisclosed Evidence and Testimony, Motion for Further Discovery, and his Motion

to Amend and Supplement Complaint and overruled his Objections to Various Affidavits.  Doc.

137.   Against that background, the Court turns to the present motions.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine dispute[1] as to

any material fact and the moving party is entitled to judgment as a matter of law."   Fed.R.Civ.P.

56.   On a motion for summary judgment, the movant has the burden of showing that there exists

no genuine [dispute] of material fact, and the evidence, together with all inferences that can

reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the

motion.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-59 (1970).   Nevertheless, the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment;   the requirement is that there be no *genuine* [dispute] of

*material* fact.   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in

original).   Summary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to

"secure the just, speedy and inexpensive determination of every action."   *Celotex Corp. v. Catrett,*

477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move

for summary judgment asserting that the opposing party will not be able to produce sufficient

evidence at trial to withstand a Rule 50 motion for judgment as a matter of law.   *See, Street v. J.C.*

---

[1]   The word "dispute" was substituted for "issue" in Fed. R. Civ. P. 56 as of December 1, 2010. The
amendment, according to its drafters, did not change the summary judgment standard.

*Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

> The moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine [dispute] of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). In ruling on a motion for summary judgment (in other words, determining whether there is a genuine [dispute] of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine dispute of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Taft Broad. Co., v. United States,* 929 F.2d 240, 248 (6th Cir. 1991). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.

*Id.* The court "must evaluate each party's motion on its own merits and may not grant summary judgment in favor of either party … if disputes remain as to material fact." *Id.*

The Court will first address the various Defendants' Motions for Summary Judgment. In doing so, and with the above-cited principles in mind, at this stage of the litigation and for purposes of Defendants' motions, the facts, construed in the light most favorable to Mr. Smith are as follows.

Defendant Douglas Kowalski is employed as a police officer by the City of Kettering, Ohio, and was so employed at all times relevant to this action. Affidavit of Douglas Kowalski, May 31, 2010, Doc. 100, Attachment 1 thereto, PageID 906-09 (Kowalski Aff.). Officer Kowalski was assigned to the Montgomery County Sheriff's Office Organized Crime Unit (MCSOOCU) during the relevant time. *Id.,* PageID 906. Defendant Michael J. Hild, Jr. was employed with the Montgomery County Sheriff's Office (MCSO) on February 6, 2009, and had been so employed since 1991. Affidavit of Michael J. Hild, Jr., May 29, 2012, Doc. 101, Attachment 5 thereto, PageID 1025-27 (Hild Aff.). Defendant Steven Gardiner was employed with the MCSO on February 9, 2009, and had been employed with the MCSO since 1995. Affidavit of Steven Gardner, May 25, 2012, Doc. 101, Attachment 4 thereto, PageID 1019-22 (Gardiner Aff.). Defendant Paul Henson was employed by the MCSO on February 6, 2009, and has been so employed since 1999. Affidavit of Paul Henson, May 18, 2012, Doc. 101, Attachment 3 thereto, PageID 1015-18 (Henson Aff.). On the date relevant to Mr. Smith's claims, that is, February 6, 2009, Defendant Hild was assigned to the MCSOOCU and he held the rank of Lieutenant, Hild Affidavit, PageID 1025, and Defendants Gardiner and Henson were both classified as detectives and were also assigned to the MCSOOCU. Gardiner Aff., PageID 1019; Henson Aff., PageID

6

1015.

On February 6, 2009, the Warren County Drug Task Force (WCDTF) and the federal Drug Enforcement Agency (DEA) obtained an anticipatory search warrant from a judge of the Montgomery County Court of Common Pleas for 284 Lensdale Avenue, Dayton, Ohio, Mr. Smith's residence. Affidavit of Daniel Schweitzer, May 31, 2012, Doc. 100, Attachment 2 thereto, PageID 910-921; see also Doc. 101, Attachment 2 thereto, PageID 1000-11 (Schweitzer Aff.)[at all times relevant to Mr. Smith's claims, Daniel Schweitzer was employed as a detective with the WCDTF. PageID 910 and 1000]; Affidavit of William Couch, May 31, 2012, Doc. 100, Attachment 3 thereto, PageID 922-25, see also, Doc. 101, Attachment 6 thereto, PageID 1028-31 (Couch Aff)[at all times relevant to Mr. Smith's claims, William Couch was employed as a police officer with the WCDTF. PageID 922 and 1028]; Affidavit of Brad Williams, May 30, 2012, Doc. 100, Attachment 4 thereto, PageID 926-30; see also Doc. 101, Attachment 7 thereto, PageID 1032-36 (Williams Aff.)[at all times relevant to Mr. Smith's claims, Brad Williams was employed as a police officer with the City of Trotwood Police Department. PageID 926 and 1032]. Agents with the WCDTF and DEA obtained the warrant as part of a reverse buy/sell exchange at the Lensdale Avenue address involving the sale of eight-hundred (800) eighty milligram (80 mg.) sham green-colored tablets of OxyContin for the purchase price of Twenty-Nine Thousand Six-Hundred Dollars ($29,600.00). Schweitzer Aff., PageID 910 and 1000; Couch Aff., PageID 922 and 1028. Because the warrant which WCDTF and DEA agents obtained was to be executed in Montgomery County, the MCSOOCU assisted with its execution on the basis that it is a customary law enforcement practice for the local police jurisdiction where a search is to occur to assist with securing the premises which is the subject of a search warrant. Schweitzer Aff.,

PageID 911 and 1001; Couch Aff., PageID 923 and 1029. Defendant Kowalski was not involved in the investigation of Mr. Smith which led to the obtaining and execution of the search warrant. Kowalski Aff., PageID 907. Defendant Kowalski was assigned to the ram position, the function of which is to use a ramming device to break through the entrance when subjects within the home do not voluntarily permit access. *Id.* Similarly, members of the MCSOOCU were not involved in the investigation of Mr. Smith which led to the obtaining of and execution of search warrant. Schweitzer Aff., PageID 911 and 1001. The MCSOOCU comprised the entry team that was responsible for securing the residence upon the officers' entry into it. *Id.*

On the morning of February 6, 2009, members of the MCSOOCU, including Defendant Kowalski and other police officers, were informed that they would participate in the execution of the search warrant at issue. Kowalski Aff., PageID 907; Hild Aff., PageID 1024; Henson Aff., Page 1016; Gardiner Aff., PageID1020; Williams Aff., PageID 927 and 1033; Couch Aff, PageID 923 and 1029; Schweitzer Aff., PageID 911 and 1001. On that same morning, prior to the execution of the warrant, Defendants Kowalski, Hild, Henson, and Gardiner and other members of the team who had been assigned to the relevant operation attended a pre-operation briefing at the DEA offices. Kowalski Aff. PageID 907; Hild Aff. PageID 1024; Henson Aff. 1016; Gardiner PageID 1020; Couch Aff. PageID 923; 1029; Williams Aff. PageID 927 and 1033; Schweitzer Aff., PageID 911 and 1001. Brad Williams informed those in attendance at the briefing that he had personal knowledge about Mr. Smith and advised the attendees that Mr. Smith had recently been involved in an incident involving firearms. Williams Aff. PageID 927 and 1033. Defendant Henson had previously been a police officer in the Drexel area of Jefferson Township and during that time had become personally familiar with Mr. Smith because he had been to Mr. Smith's

8

home on several occasions for police business including calls for vandalism, protection orders, warrants, and disorderly conduct. Henson Aff. PageID 1016. After the briefing at the DEA offices was completed, Defendant Hild held an operational meeting with the members of the entry team concerning the entry into the residence at 284 Lensdale Avenue. Hild Aff., PageID 1024.

After all the briefings were completed, the entry team, including Defendants Kowalski, Henson, Hild, and Gardiner traveled together to the vicinity of 284 Lensdale Avenue in the MCSOOCU van and awaited further instructions from the WCDTF. Henson Aff., PageID 1016; Hild Aff., PageID 1024; Gardiner Aff., PageID 1020. Members of the entry team were dressed in marked sheriff's office raid uniforms. Kowalski Aff., PageID 907; Henson Aff., PageID 1016; Hild Aff., PageID 1024; Gardiner Aff., PageID 1020.

At approximately 11:20 a.m., at the direction of Commander John Burke of the WCDTF, the entry team of the MCSOOCU began the operation involving the execution of the search warrant at 284 Lensdale Avenue. Kowalski Aff., PageID 907; Henson Aff., PageID 1017; Hild Aff., PageID 1024; Gardiner Aff., PageID 1020. A uniformed deputy, Gerald Bemis, knocked on the door and announced the officers' presence and purpose. Hild Aff., PageID 1024; Henson Aff., PageID 1017; Gardiner Aff., PageID 1020. A period of time passed and nobody inside the residence responded to Deputy Bemis' knock, so Defendant Kowalski rammed the door which then partially opened. Kowalski Aff., PageID 907; Henson Aff., PageID 1017; Hild Aff., PageID 1025; Gardiner Aff., PageID 1021. The entry team subsequently determined that the front door was barricaded with furniture, specifically, a couch. Kowalski Aff., PageID 907; Henson Aff., PageID 1017; Hild Aff., PageID 1025; Gardiner Aff., PageID 1021.

Defendant Gardiner, who was carrying a shotgun, was the first officer to enter the

residence. Gardiner Aff., PageID 1021.   While entering, Defendants Gardiner was loudly announcing, "Sheriff's Office. Search warrant." *Id.* Defendant Henson, who was the second officer to enter the residence, also announced that the officers were with the Montgomery County Sheriff's Office and that they had a search warrant for 284 Lensdale Avenue. Henson Aff., PageID 1017. Defendant Kowalski was the fourth officer to enter the residence and as he was entering, he heard other officers announce loudly that they were law enforcement officers and they were serving a search warrant. Kowalski Aff., PageID 908.

After entering through the front door, Defendant Gardiner took a holding position down a hallway adjacent to the front living room area. Gardiner Aff., PageID 1021. Defendants Henson, Hild, and Kowalski followed Defendant Gardiner down the hallway. Henson Aff., PageID 1017; Hild Aff., PageID 1025; Kowalski Aff., PageID 908. Defendant Gardiner saw someone in the bathroom area. Gardiner Aff., Page ID 1021. Defendants Gardiner, Hild, and Henson heard noise in the bathroom including water running and a toilet flushing. *Id.*; Hild Aff., PageID 1025; Henson Aff., PageID 1017. Defendants Gardiner and Henson began giving the individual in the bathroom verbal orders to step out of the bathroom, show them his hands, and lay on the floor.   Gardiner Aff., PageID 1021; Henson Aff., PageID 1017.

Mr. Smith avers he did not hear the officers announce their entrance into his residence or the fact that they were executing a search warrant. Affidavit of Billy M. Smith, July 17, 2012, Doc. 127, Attachment 22 thereto (Smith Aff. No. 1); Affidavit of Billy M. Smith, July 17, 2012, Doc. 127, Attachment 25 thereto (Smith Aff. No. 2). Mr. Smith was in the bathroom, standing in front of the toilet, and the door was closed. Smith Aff. No. 1, PageID 2450; Smith Aff. No. 2, PageID 2504. Mr. Smith was first aware of the officers' presence when he heard several persons yelling for

him to come out of the bathroom. Smith Aff. No. 1, PageID 2450; Smith Aff. No. 2, PageID 2504.

When he heard the officers yelling, Mr. Smith avers he thought that an individual by the name of

Greg Williamson had brought some people to his residence for the purpose of robbing him. Smith

Aff. No. 1, PageID 2450; Smith Aff. No. 2, PageID 2504. Mr. Smith immediately came out of the

bathroom when he heard the several persons yelling for him to do so. Smith Aff. No. 1, PageID

2450; Smith Aff. No. 2, PageID 2504. Mr. Smith opened the bathroom door with his right hand

and swung it out of his way so that he could exit the bathroom. Smith Aff. No. 1, PageID 2451;

Smith Aff. No. 2, PageID 2504. Mr. Smith was not able to identify the persons in the hallway

because the hallway and living room lights were not on and it was mostly dark in those areas.

Smith Aff. No. 1, PageID 2451; Smith Aff. No. 2, PageID 2505. As he stepped out of the bathroom

doorway, Mr. Smith heard the individuals in the hallway continue to yell, but avers he did not

understand what they were saying. Smith Aff. No. 1, PageID 2451; Smith Aff. No. 2, PageID

2505.   Mr. Smith's understanding of what was being said to him was that he was to come forward

toward the officers who were at the end of the hallway at the living room edge and he did that

without hesitation. Smith Aff. No. 1, PageID 2451. It was Mr. Smith's understanding of the yelling

that he was to come out of the bathroom and walk forward toward the persons yelling at him and he

did that without hesitation by walking down the narrow hallway toward the living room. Smith

Aff. No. 2, PageID 2405. Mr. Smith also understood that when he was about half-way down the

hallway, he was to get down on the floor. Smith Aff. No. 1, PageID 2451; Smith Aff. No. 2,

PageID 2505. Mr. Smith obeyed the commands because he could see two laser target lights on his

chest and he knew that the persons in the house were pointing guns at him. Smith Aff. No. 1,

PageID 2451; Smith Aff. No. 2, PageID 2505.

11

While Mr. Smith was in the process of getting down onto the floor, some of the officers came forward toward him, grabbed him by the sweatshirt, and forced him down onto the carpeted hallway floor. Smith Aff., No. 1, PageID 2451; Smith Aff. No. 2, PageID 2505. It was Defendants Henson and Gardiner who pulled Mr. Smith to the hallway floor. Henson Aff., PageID 1017; Gardiner Aff., PageID 1021. As he was pulled down onto the floor, Mr. Smith landed on his stomach and at least one or perhaps two persons landed on top of his back. Compare, Smith Aff. No. 1, PageID 2451, with Smith Aff. No. 2, PageID 2505. When Mr. Smith landed on the hallway floor, his hands and arms were stretched out flat on the floor above his head and were not under his body at any time during the encounter with the officers in the hallway. Smith Aff. No. 1, PageID 2451. While Mr. Smith was on the floor, because of the amount of weight on him, he found it difficult to breathe and he tried to push the weight off so that he could breathe. Smith Aff. No. 2, PageID 2504. In addition, while Mr. Smith was on the floor, he avers there were people yelling at him to tell them where he had drugs, guns, a safe, and money and other officers were hitting him all over his body including his head, face, arms, shoulders, back, legs, and rib cage area. Smith Aff. No. 1, PageID 2451-52; Smith Aff. No 2, PageID 2505. In addition, one or more officers were stomping on his hands. Smith Aff. No. 1, PageID 2452; Smith Aff. No. 2, PageID 2505. The beating did not stop until Mr. Smith told the officers the locations of the items they had asked about such as the money and guns. Smith Aff. No. 1, PageID 2452; Smith Aff. No. 2, PageID 2506. The last general thing that Mr. Smith remembers after the beating was that the officers handcuffed him in the front of his body and he rolled into a sitting position. Smith Aff. No. 1, PageID 2452; Smith Aff. No. 2, PageID 2506. At no time did any of the officers tell Mr. Smith that he was under arrest nor did they tell him that they had a search warrant and no officer ever gave

him a search warrant. Smith Aff. No. 1, PageID 2452. After the incident in his residence, Mr. Smith was dazed, could not remember most of the events that happened after the beating, and most of his memory came back while he was being treated at the hospital approximately four hours after the incident. Smith Aff. No. 1, PageID 2452.

At the time this incident occurred, the officers had not yet cleared and secured the other rooms in the residence. Gardiner Aff., PageID 1021; Hild Aff., PageID 1025. Once Mr. Smith was placed in handcuffs, Defendants Gardiner, Henson, and Hild secured the remaining rooms in the residence. Gardiner Aff., PageID 1021; Henson Aff., PageID 1018; Hild Aff., PageID 1026. While he was in the bathroom, Defendant Henson observed green pills in the toilet and on the bathroom floor and a cell phone, blood, and eyeglasses on the hallway floor. Henson Aff., PageID 1018.

Defendant Gardiner escorted Mr. Smith, who was walking under his own power, from the residence to the WCDTF mobile command van which was stationed at the scene. Gardiner Aff., PageID 1022. The officers requested that an ambulance be dispatched to the scene because the officers observed that Mr. Smith had facial injuries. Williams Aff., PageID 927; Couch Aff., PageID 923. The officers observed the paramedics arrive and render assistance to Mr. Smith. Williams Aff., PageID 927; Couch Aff. PageID 923. Officer Williams observed and heard Mr. Smith refuse additional medical treatment and he (Officer Williams) signed the treatment waiver form on behalf of Mr. Smith at Mr. Smith's request. Williams Aff., PageID 927 and 1033 and Ex. 1 thereto, PageID 929 and 1035.

After the members of the MCSOOCU and entry team released Mr. Smith to the WCDTF, they left the scene.  Kowalski Aff., PageID 909; Henson Aff., PageID 1018; Hild Aff., PageID 1026; Gardiner Aff., PageID 1022. No member of the MCSOOCU or entry team including

13

Defendant Kowalski, participated in the interrogation of Mr. Smith. Williams Aff., PageID 927 and 1033; Couch Aff., PageID 923 and 1029.

Prior to interrogating him, Officers Williams and Couch presented Mr. Smith with a Miranda Waiver form which he executed after waiving his *Miranda* rights. Williams Aff., PageID 927 and 1033 and Ex. 2 thereto, PageID 930 and 1036; Couch Aff., PageID 923 and 1029 and Ex. 1 attached thereto, PageID 925 and 1031. Mr. Smith was eventually released by Officers Williams and Couch.

Subsequently, Mr. Smith was charged with resisting arrest in Montgomery County Area 1 Court case number 2009CRB 00209. Smith Aff. No. 1, PageID 2454; Affidavit of Greg Spears, May 18, 2012, Doc. 101, Attachment 10 thereto, PageID 1042 (Spears Aff.) [at the relevant time, Mr. Spears was an assistant Montgomery County prosecutor in that court, which is now known as the Montgomery County Municipal Court, Western Division, and he was assigned to prosecute the case; PageID 1042]. After the charges were filed, Mr. Spears decided to dismiss the matter on the basis that Mr. Smith was going to be indicted on felony drug distribution charges. Spears Aff., PageID 1043. The matter was dismissed without prejudice on July 29, 2009.   *Id.*

Indeed, based on the search and events of February 6, 2009, on February 2, 2010, Mr. Smith was charged in this Court by way of Information with conspiracy to possess with intent to distribute and distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). *United States v. Smith,* No. 3:10-cr-024, Doc. 1 (filed Feb. 2, 2010).  Mr. Smith eventually waived his right to be indicted by the grand jury, entered into a plea agreement with the United States, and was sentenced to two sixty-month terms of imprisonment to be served

14

concurrently. *Id.* at Doc. 5, 4, 19.

Section 1983 of Title 42 of the United States Code was adopted as a part of the Civil Rights Act of April 20, 2871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, of other proper proceeding for redress, except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, an Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. 21 1983.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunesat Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299, 305-06 (1986); *Carey v. Piphus,* 435 U.S. 247, 254 (1978). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 161 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. See *West v. Atkins,* 487 U.S. 42, 48 (1988); *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155 (1978).

As noted above, Mr. Smith has brought his claims against the MCSO as well as the

15

individual Defendants. However, "the Defendant 'Sheriff's Office' is a subunit of Montgomery County, and appears not be to an entity, in and of itself, subject to suit." *Elam v. Montgomery County,* 573 F.Supp. 797, 804 (S.D. Ohio 1983); *Williams v. Dayton Police Dept.,* 680 F.Supp. 1075, 1080 (S.D. Ohio 1987)("the Dayton Police Department and Dayton Police Organized Crime Unit are sub-units of the city government and are merely vehicles through which the city fulfill its policing functions … [and a]s such are not proper party defendants…."); see also, *Nieves v. City of Cleveland,* 153 Fed.Appx. 349, 350 n. 1 (6th Cir. 2005)(noting district court's determination that the Cleveland Police Department was not *sui juris* and dismissing it as a party to the action). Accordingly, there is no genuine issue of material fact on this point and the MCSO is entitled to judgment as a matter of law as to any and all claims Mr. Smith has brought against it.

The Fifth Amendment to the United States Constitution states, in material part, that "No person shall … be deprived of life, liberty, or property, without due process of law [.]" U.S. Const. Amend. V.   The due process clause of the Fifth Amendment "circumvents only the actions of the federal government". *Scott v. Clay County, Tenn.,* 205 F.3d 867, 873 n.8 (6th Cir. 2000)(citations omitted). Stated differently, the due process clause of the Fifth Amendment does not apply to state or individual action. Accordingly, to the extent that Mr. Smith has brought claims against the various Defendants pursuant to the Due Process Clause of the Fifth Amendment, Defendants are entitled to judgment as a matter of law on those claims.

The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, but an impartial jury of the State and district where in the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining

> witnesses in his favor, and to have the Assistance of Counsel for his
> defense.

U.S. Const. amend. VI. The Sixth Amendment protects criminal defendants during trial. *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 679 (6th Cir. 2005). "The Sixth Amendment does not come into play until the government has committed itself to prosecution." *Burchett v. Kiefer,* 310 F.3d 937, 947 (6th Cir. 2002)(citation omitted). Because there was no prosecution in existence on February 6, 2009, the Sixth Amendment simply has no application to any of Mr. Smith's claims. Accordingly, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Mr. Smith's Sixth Amendment claims.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecution." *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)(citation omitted). "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Id.* As with Mr. Smith's Sixth Amendment claims, because there was no prosecution in existence on February 6, 2009, nor a formal adjudication of guilt, the Eighth Amendment has no application to any of Mr. Smith's claims. Accordingly, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on Mr. Smith's Eighth Amendment claims.

The Equal Protection Clause of the Fourteenth Amendment provides in part, that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. "This is 'essentially a direction that all persons similarly situated should be treated

alike.'" *Jolivette v. Husted,* ___ F.3d ___, ___, No. 12-3998, 2012 WL 4051214 *9 (6th Cir. Sept. 14, 2012)(citation omitted). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis,* 426 U.S. 229, 239 (1976). It prohibits the States from making distinctions that burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Vacco v. Quill,* 521 U.S. 793, 799 (1997).

Mr. Smith has not alleged nor come forward with any evidence that he is a member of a suspect class or that Defendants intentionally treated him differently from other who are or were similarly situated without any rational basis for the difference. To the extent that Mr. Smith has made claims against Defendants pursuant to the Equal Protection Clause of the Fourteenth Amendment, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on those claims.

Mr. Smith has brought several claims against Defendants based on the Due Process Clause of the Fourteenth Amendment. Mr. Smith seems to claim that Defendants violated his Fourteenth Amendment due process rights by unlawfully searching his home, unlawfully taking him into custody, submitting false information to obtain a search warrant, and concealing information that would have assisted him in his defense against subsequent criminal charges.

The Due Process Clause of the Fourteenth Amendment provides that certain substantive rights "cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). To establish a procedural due process violation under 42 U.S.C. § 1983, a plaintiff is required to demonstrate three elements: (1) that he had a life, liberty, or property interested protected by the Due Process Clause of the Fourteenth

Amendment; (2) that he was deprived of that protected interest within the meaning of the Due Process Clause; and (3) that the defendant did not afford the plaintiff procedural rights before depriving him of his protected interest. *Wedgewood Ltd. Partnership I v. Town of Liberty, Ohio,* 610 F.3d 340, 350 (6th Cir. 2010)

The Court will assume, *arguendo¸* that all of the allegations Mr. Smith has made against Defendants relative to his Due Process claims are, in fact, interests protected by the Due Process Clause.   That is, that he has protected interests to not have his home unlawfully searched, to not be unlawfully taken into custody, to not have false information submitted in support of a search warrant, and to not have information that would have assisted him in his defense against subsequent criminal charges concealed from him.

First, the Court notes that Mr. Smith's claims are somewhat inconsistent. While on the one hand, he seems to allege that Defendants engaged in the search of his home without benefit of a warrant, on the other hand, he alleges that Defendants obtained a warrant by using false information. Nevertheless, for the following reasons, Mr. Smith's Due Process Clause claims have no bases in fact.

The undisputed evidence is that Defendants obtained an anticipatory search warrant from a judge of the Montgomery County Court of Common Pleas for 284 Lensdale Avenue, Dayton, Ohio, Mr. Smith's residence. While Mr. Smith claims that he never saw a warrant or that Defendants ever gave him one, he does not dispute, with any proper Rule 56 evidence, that Defendants obtained the warrant.[2]   Further, Mr. Smith has not come forward with any admissible evidence that any Defendant provided the issuing judge false information in an effort to obtain the

---

[2] The Court notes that Mr. Smith's own testimony is that he could not remember most of the events that happened after the beating.

warrant or that any Defendant concealed information that would have assisted him in his defense against subsequent criminal charges. Accordingly, there are not genuine issues of material fact and Defendants are entitled to judgment as a matter of law on any claims Mr. Smith has brought pursuant to the Due Process Clause of the Fourteenth Amendment.

To the extent that Mr. Smith brings the search warrant, unlawful custody, false information, and withholding information claims under the Fourth Amendment, those claims likewise fall because they have no factual support. Additionally, any such Fourth Amendment claims fail for the following reason.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause…." U.S. Const. amend. IV. "Fourth Amendment claims arising out of searches occurring prior to a guilty plea and incarceration are precluded by *Heck v. Humphrey,* 512 U.S. 477, 487 …  (1994), on the grounds that a civil suit holding that these searches were improper would undermine the basis of Petitioner's guilty plea and sentence." *Jacob v. Township of West Bloomfield,* 531 F.3d 385, 388 (6th Cir. 2008).

As noted above, based on the search and other events of February 6, 2009, on February 2, 2010, Mr. Smith was charged in this Court by way of Information with conspiracy to possess with intent to distribute and distribute Oxycodone and with being a convicted felon in possession of a firearm, he waived his right to be indicted by the grand jury, entered into a plea agreement with the United States, and on September 9, 2010, the court in that matter sentenced him to, *inter alia,* two sixty-month terms of imprisonment to be served concurrently. On the basis of *Heck, supra,* and *Jacob, supra,* there are no genuine issues of material fact and Defendants are entitled to judgment

as a matter of law on any Fourth Amendment claims Mr. Smith has brought against them.

Mr. Smith has brought a claim of excessive force against Defendants.

The use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation. *Marcilis v. Township of Redford,* ___ F.3d ___, ___, No. 11-1073, 2012 WL 3854793 at *5 (6th Cir. Sept. 6, 2012)(citation omitted). Excessive force claims are analyzed under the Fourth Amendment's "reasonableness" standard. *Schreiber v. Moe,* 596 F.3d 323, 331-32 (6th Cir. 2010). That is, the inquiry is whether the totality of the circumstances justified the use of force. See *Tennessee v. Gardner,* 471 U.S. 1, 8-9 (1985). "To determine whether a constitutional violation based on excessive force has occurred, this Court applies the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Marcilis, supra,* quoting *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity seeks to prevent government officials, such as police officers, from being held liable for reasonable mistakes of law, fact, or mixed questions of law and fact made while acting within their scope of authority. *Simmons v. Genesee County,* 682 F.3d 438, 443 (6th Cir. 2012)(citation omitted). To determine whether qualified immunity shields a government official's action from § 1983 liability, the court applies to two-prong *Saucier* test and inquires (1) whether the officers violated a constitutional right and (2) if so, whether that constitutional right was clearly established such that

a "reasonable official would understand that what he is doing violates that right." *Id.,* citing *Saucier v. Katz,* 533 U.S. 194, 202 (2001), *abrogated in part by Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

> Supreme Court precedent, *Michigan v. Summers,* 452 U.S. 692, 702-03 … (1981)(footnote omitted), recognizes the dangers inherent in narcotics-related searches:
>
> > [T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

*Marcilis,* ___ F.3d at ___, 2012 WL 3854793 at *6.

Regardless of whether the force allegedly used by the police officers in this case was greater than necessary, this Court believes, as did the court in *Marcilis,* that the police officers could have reasonably believed that their conduct was a lawful means of exercising command of the situation. The Court bases its belief and ultimate conclusion on several factors.

First, the warrant in this matter authorized the officers to search Mr. Smith's home for a large quantity of a narcotic drug as well as for the instrumentalities of drug trafficking. Secondly, the warrant authorized the officers to search Mr. Smith's person for those same items. Third, prior to the officers executing the search warrant, Brad Williams informed the officers that, based on his personal knowledge, Mr. Smith had recently been involved in an incident involving firearms. Fourth, prior to executing the warrant, Defendants knew that in the past police had been called to Mr. Smith's home for various police-related matters.

In addition to these four factors, the Court is most persuaded by several facts included in Mr. Smith's own affidavit. Specifically, as noted above, Mr. Smith testified that the hallway and

22

living room lights were not on and that it was mostly dark in those areas. The officers, then, were operating in a darkened area, executing a warrant for a large quantity of drugs in the home of an individual with a known history involving firearms. More importantly, however, Mr. Smith, who initially thought he was going to be the victim of a robbery, admitted that he struggled with the officers. Smith Aff. No. 2, PageID 2504.

Under the circumstances---(1) a raid on a home where police had been authorized to search for a substantial amount of drugs; (2) the home of an individual whom police knew had been involved with firearms; (3) the police operating in a darkened area of the home; and (4) a struggling suspect---this Court concludes that a reasonable officer would not have known that the force used here would have been considered excessive. See *Marcilis,* ___ F.3d at ___, 2012 WL 3854793 at *7. "The contours of the right to freedom from the use of excessive force were not so clearly established in a particularized sense that a reasonable officer would have known that such conduct was unlawful [here]". *Id.,* citing *Dorsey v. Barber,* 517 F.3d 389, 402 (6th Cir. 2008). Accordingly, there are no genuine issues of material fact, Defendants are entitled to qualified immunity in this case and are therefore entitled to judgment as a matter of law on Mr. Smith's excessive force claim.

Mr. Smith has also brought a claim against Defendants of "deliberate indifference" towards his medical needs.

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. Pretrial detainees and suspects are "analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979); *Barber*

*v. City of Salem, Ohio,* 953 F.2d 232, 235 (6th Cir. 1992). The "deliberate indifference" standard involves a two-pronged analysis which includes both an objective and a subjective component. *Farmer v. Brennan,* 511 U.S. 825, 835-37 (1994); *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000). The objective component requires the existence of a "sufficiently serious" medical need, *Farmer,* 511 U.S. at 834, and the subjective element requires the detainee to show that the defendant possessed "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 894 (6th Cir. 2004)(citation omitted). Minor cuts and bruises do not constitute serious medical needs for purposes of a "serious indifference" claim. *Lockett v. Suardini,* 526 F.3d 866, 877 (6th Cir. 2008).

First, Mr. Smith's "serious indifference" claim fails because it is simply not supported by the facts. As noted above, Mr. Smith has testified that he "was dazed and could not remember most of the events that happened after the beating" and that most of his memory did not come back until about four hours later when he was being treated at the hospital. Therefore, Mr. Smith is unable, and indeed, has failed, to dispute Defendants' evidence that they saw an ambulance on the scene and that it had been requested because Mr. Smith had facial injuries. Mr. Smith has also failed to counter Defendants' evidence that paramedics rendered initial medical assistance to him and that he refused additional treatment. Second, Mr. Smith's "serious indifference" claim fails because he has not come forward with any evidence that he suffered a "sufficiently serious" medical condition [injury]. Therefore, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Mr. Smith's "deliberate indifference" claim.

Mr. Smith also claims Defendants are liable to him under § 1983 for failure to protect him from the alleged excessive force.

24

"Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable with (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott,,* 199 F.3d 425, 429 (6th Cir. 1997).   However, because Mr. Smith has failed to establish that for purposes of § 1983 any of the Defendants used excessive force in executing the search warrant or in taking him into custody, his claims for failure to protect him from preventing the use of excessive force fails. Therefore, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Mr. Smith's "failure to protect" claim.

Mr. Smith also seems to have raised several state law claims. However, for the following reasons, those claims fail.

To the extent that Mr. Smith has raised state law claim for assault and battery, any such claim is barred by Ohio's one-year statute of limitations. Specifically, Ohio statutory law provides that actions for assault and battery shall be brought within one year after the cause of action of accrues. O.R.C. § 2305.111(B). The events which gave rise to this action occurred on February 6, 2009, and Mr. Smith did not file the current action until December 2, 2010, more than twenty-one months later. (Doc. 1).

Similarly, any state law claim that Mr. Smith has raised for intentional infliction of emotional distress, is also barred by Ohio's one-year statute of limitations. The statute of limitations in Ohio which applies to the intentional infliction of emotional distress can vary depending on the type of action which gives rise to the claim. *Freeman v. City of Lyndhurst,* No. 1:09cv2006, 2010 WL 908171 at *3 (N.D.Ohio Mar. 12, 2010), quoting *Crist v. Pugin,* No. 3:08

CV 501, 2008 WL 2571229 at *1-2 (N.D.Ohio June 25, 2008), citing, *Stafford v. Clever Investigations,* No. 06AP-1204, 2007 WL 2800333 at *2 (Ohio App. 10th Dist. Sept. 27, 2007). Generally, the applicable statute of limitations for a claim of intentional infliction of emotional distress is four years. *Freemen, supra.* However, when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress. *Id.* Because Mr. Smith's intentional infliction of emotional distress claims is based on the companion assault and battery claim, the one-year statute of limitations applies.

To the extent that Mr. Smith has brought state law negligence claims against Defendants, any such claims are barred by O.R.C. § 2744.03(A)(6). See *Morrison v. Board of Trustees of Green Township,* 529 F.Supp.2d 807, 835 (S.D.Ohio 2007), *aff'd,* 583 F.3d 394 (6th Cir. 2009); *Hunt v. City of Toledo Law Dept.,* ___ F.Supp.2d ___, 2012 WL 3075457 at *24 (N.D. Ohio July 30, 2012); see also, *Boyd v. Village of Lexington,* No. 01-CA-64, 2002 WL 416016 (Ohio App. 5th Dist. Mar. 14. 2002).

Mr. Smith's final claim against Defendants seems to be one for malicious prosecution with respect to the charges of resisting arrest.

In Ohio, the statute of limitations for a claim of malicious prosecution begins to run when a prosecutor determines not to pursue charges against the plaintiff. *Cromartie v. Goolsby*, No. 93438, 2010 WL 2333004 at *5 (Ohio App. 8th Dist. June 10, 2010), citing, *Froehlich v. Ohio Dept. of Mental Health,* 114 Ohio St.3d 286 (2007). The statute of limitations for malicious prosecution is one year. *Cromartie, supra.*

The evidence shows that the state dismissed, without prejudice, the resisting arrest charges against Mr. Smith on July 29, 2009. As noted, Mr. Smith brought the instant action on December

26

2, 2010, long past the one year statute of limitations had passed.

For the foregoing reasons, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on all of Mr. Smith's state law claims.

As noted above, this matter is before the Court on the parties' cross-motions for summary judgment. However, because the Court concludes that Defendants are, for various reasons, entitled to judgment as a matter of law on each and every one of Mr. Smith's claims, it follows that Mr. Smith cannot succeed on his various Motions for Partial Summary Judgment.

It is therefore recommended that

(1) Defendant Douglas Kowalski's Motion for Summary Judgment, (Doc. 100), be granted;

(2) Defendants Montgomery County Sheriff's Office, Michael L. Hild, Jr.'s, Paul Henson's, and Steven Gardiner's Motion for Summary Judgment, (Doc. 101), be granted;

(3) [Plaintiff's] Motion for Partial Summary Judgment Against Defendant Henson, (Doc. 110), be denied;

(4) [Plaintiff's] Motion for Partial Summary Judgment against Defendant Kowalski, (Doc. 111), be denied;

(5) [Plaintiff's] Motion for Partial Summary Judgment against Defendant Montgomery County Sheriff's Office, (Doc. 112), be denied;

(6) [Plaintiff's] Motion for Partial Summary Judgment against Defendant Gardiner, (Doc. 121), be denied; and

(7) [Plaintiff's] Motion for Partial Summary Judgment against Defendant Hild,

(Doc. 122), be denied.

October 9, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).